**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Heather K. Coleman, | ) | Civil Action No. 3:19-cv-03515-JMC |
| | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER AND OPINION** |
| | ) | |
| v. | ) | |
| | ) | |
| Bank of America, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court pursuant to Defendant Bank of America, N.A.'s Motion to Dismiss (ECF No. 6) all remaining claims of Plaintiff Heather K. Coleman on the ground that the claims are time-barred.[1] Plaintiff brings her claims, alleging Defendant: (1) participated in unfair trade practices in violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 to § 39-5-560 (West 2020), (2) has been unjustly enriched based on those unfair practices, (3) breached its alleged duty in its selection of an appraiser when the appraiser allegedly provided a wholly inaccurate appraisal and (4) failed to disclose that the appraiser engaged in alleged willful and reckless behavior despite Defendant's knowledge of such behavior.[2] (ECF No. 6.) For the reasons set forth below, the court **GRANTS** Defendant's Motion to Dismiss (ECF No. 6).

---

[1] James Walker Coleman, IV, a plaintiff in the original Complaint, filed a Notice of Voluntary Dismissal on May 20, 2020 (ECF No. 15), and was terminated from the case on the same day. (ECF No. 16.)

[2] Plaintiffs also filed claims alleging violations of the South Carolina Licensing Requirements Act of Certain Brokers of Mortgages on Residential Real Property, S.C. Code Ann. § 40-58-10 (West 2020), but abandoned these claims in their Reply to Defendant's Motion to Dismiss. (ECF Nos. 1 at 7-8; 12 at 8.)

## I.     JURISDICTION

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (1) the amount in controversy exceeds $75,000.00; and (2) complete diversity exists in that Defendant is a citizen of North Carolina and Plaintiff is a citizen of South Carolina.  (ECF Nos. 1 at 2, 1-1 at 6.)  When a federal court sits pursuant to diversity jurisdiction, it applies federal procedural law and state substantive law.  *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action in Richland County Court of Common Pleas, Fifth Judicial Circuit on November 8, 2019.  (ECF No. 1-1 at 1.)  Plaintiff alleges she was informed by unnamed individuals in 2005 of a prospective investment opportunity involving a residential development called Cobblestone Park, located in Blythewood, South Carolina.  (ECF No. 1-1 at 6 ¶ 4.)  Cobblestone would be constructed by the development group The Ginn Company ("Ginn").  (*Id.* ¶ 5.)  "Plaintiff[] [was] informed that Ginn would be breaking ground on a twelve-million-dollar amenity center to include a pool, tennis courts[,] and dining [to be completed] in June 2006."  (*Id.*)  This facility would also include a 36-hole golf course and Ginn would be spending "between 45 and 50 million dollars in infrastructure and improvements to the property." (*Id.*)  Looking to take advantage of this opportunity, Plaintiff alleges she contacted Defendant to secure financing and conduct an appraisal for the lot because Defendant was Ginn's preferred lender and Plaintiff had an established relationship with Defendant.  (*Id.* ¶ 4.)  Plaintiff claims Defendant's reported appraisal value, equating to the purchase price, "assuaged [her] concerns" and reinforced Ginn's claim that purchasing a lot at this stage of development would be a good investment opportunity. (*Id.* at 7-8.)  Plaintiff purchased Lot 89 for Three Hundred Nine Thousand and Nine Hundred dollars ($309,900.00) on December 16, 2005.  (*Id.* at 7 ¶ 9.)

According to Plaintiff, "the promised improvements were not constructed at the property for numerous years[,]" and "[a] road to the Plaintiff[']s lot was not available for numerous years." (ECF No. 1-1 at 7 ¶ 10.) Plaintiff alleges this delay destroyed her ability to sell the lot because it was worth much less than its purchase price. (*Id.*) The essence of Plaintiff's suit against Defendant is her assertion that "Defendant knew or should have known that the value was less than what the Plaintiff[] paid, but since the Defendant had engaged in other questionable practices in other Ginn Developments, [] Defendant looked the other way when the Plaintiff[] signed up for the loan." (*Id.* at 7-8 ¶ 10.)

Plaintiff claims to have discovered the scheme involving Defendant during a conversation with her attorney on November 8, 2016, because he represented other Cobblestone lot purchasers in previous suits against Defendant as early as 2009. (ECF No. 12-1 at 4.) The details of the alleged scheme between Ginn and Defendant are as follows:

> The scheme involved the creation of high comparable sales figures for the appraisals through various techniques including, (a) using inappropriate comparables for appraisals; (b) creating documents to reflect transfers that did not exist; (c) transferring properties to bank officers and employees (sometimes known as silent partners) at artificially high prices to subsequently be flipped to an innocent purchaser; (d) purposefully soliciting and utilizing cash purchases to serve as artificially inflated comparables for appraisals, often with promises of guaranteed funding and/or other special treatment by banks and/or developers; (e) utilizing straw purchases at inflated prices; (f) falsely recording the sales prices when multiple lots were sold, so as to falsely indicate[] that one lot alone sold for the entire purchase price; and (g) soliciting sales from and providing multiple mortgage loans to unsuspecting investors, like the Plaintiff[].

(ECF No. 1-1 at 8-9 ¶ 15.)

Because Defendant loaned money to Ginn to fund the development of Cobblestone, Plaintiff claims Defendant had an interest in coercing borrowers to take out loans based on inflated appraisal values in order to secure payment on its loan to Ginn. (ECF Nos. 1-1 at 7 ¶ 6; 12-1 at

2.)  At the time of Plaintiff's suit, the lots were selling between $10,000.00 and $20,000.00, significantly lower than Plaintiff's purchase price.  (ECF No. 12-1 at 2.)  Upon discovering the scheme in 2016, Plaintiff reached out to Defendant for an adjustment on her loan, only to be rerouted perpetually through its loan assistance call center.  (ECF No. 1-1 at 8 ¶ 11.)  Plaintiff also contacted Elizabeth Timmermans, the attorney for Defendant in relation to their previous litigation involving Cobblestone Park, but did not receive a response.  (ECF No. 12-1 at 4.)

Plaintiff states the following causes of action: (1) violations of the SCUTPA; (2) unjust enrichment; (3) violations of South Carolina Licensing Requirements Act of Certain Brokers of Mortgages on Residential Real Property, S.C. Code Ann. § 40-58-10 (West 2020); and (4) negligence and failure to disclose.  (ECF No. 1-1 at 1-9.)   Plaintiff demands a jury trial for all triable issues.  (*Id.* at 9.)

Defendant removed the action to this court on December 18, 2019, and filed its Motion to Dismiss on January 9, 2020.  (ECF Nos. 1, 6.) Defendant presented both procedural and substantive arguments: (1) Plaintiff's SCUTPA claim and tort actions are time-barred under South Carolina's three-year statute of limitations; (2) Plaintiff's allegations that Defendant entered into a scheme with Ginn are not plausible; (3) Plaintiff's claims under § 40-58-10 fail because there is no private right of action under this law and Defendant is not a mortgage broker as defined in the Mortgage Brokers Act; (4) Plaintiff's SCUTPA claims fail because the alleged actions did not adversely affect the public interest; (5) Plaintiff's claims involving negligence and failure to disclose fail to state a claim; and (6) Defendant was not unjustly enriched.  (ECF No. 6-1 at 4-17.)

In her Response to Defendant's Motion, Plaintiff conceded that Defendant is not a mortgage broker and abandoned her claims under § 40-58-10 of the Mortgage Brokers Act.  (ECF No. 13 at 7.)  Defendant filed a Reply Memorandum in Support of its Motion, claiming that

Plaintiff's unjust enrichment action, while normally an action in equity with no statute of limitation, is also time-barred because "[South Carolina] courts have held that unjust enrichment actions based on a contract, obligation[,] or liability are governed by the three-year statute of limitations."  (ECF No. 13 at 10 (citing *Thomerson v. DeVito*, No. 2:18-cv-1571-RMG, 2019 WL 1472580, at *4 (D.S.C. Apr. 2, 2019)).)  Defendant's Motion to Dismiss (ECF No. 6) is now ripe for adjudication.

### III.    LEGAL STANDARD

A rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.  *Ostrzenski v. Seigal*, 177 F.3d 245, 251 (4th Cir. 1999).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## IV.    DISCUSSION

### 1.  The Parties' Arguments

Defendant contends that Plaintiff's claims are time-barred, asserting there are three points in time for Plaintiff to have discovered her claims, and they have all lapsed: (1) at the time Plaintiff purchased the lot in 2005; (2) when Ginn failed to fulfill their promise of completing the amenities by 2006; and (3) when other Cobblestone owners brought suit against Ginn in 2009.  (ECF No. 6-1 at 11-13.)  Defendant argues Plaintiff had the opportunity to discover her claims in 2005 because "Plaintiff[] had the capacity and opportunity to discover the value of [her] investment Lot upon taking possession in 2005[,]" and "Plaintiff[][was]on notice of the value of the Lot in relation to the allegedly inflated appraisal [in 2005]."  (*Id.* at 11.)  In the alternative, Defendant asserts Plaintiff should have known that the value of her lot was inflated when Ginn failed to provide the infrastructure and amenities as promised by June 2006.  (*Id.* at 12.)  Defendant explains, "[t]hus, even using the date of the promised amenities by Ginn Company . . . as the statute of limitations trigger date, Plaintiff['s] claims expired at the very latest in June 2009, more than ten years before [she] filed suit."  (*Id.*)  Finally, Defendant argues Plaintiff should have discovered a potential claim by 2009 at the very latest, when other lot owners brought suit against Defendant,[3] or when a class

---

[3] *See* ECF No. 6-1 at 12 (citing *Bank of Am., N.A. v. Picarde*, Case No. 2009-CP-40-04435 (Plaintiffs' attorney asserting counterclaims against [Defendant] on behalf of his client for alleged over-valued appraisals regarding Cobblestone Park development); *see also Bank of Am., N.A. v. Heidish*, Case No. 2011-CP-40-07759 (Richland Cty. Ct. Com. Pl.) (same); Answer and Counterclaim, *Bank of Am., N.A. v. Symms*, No. 2011-CP-40-07759 (Richland Cty. Ct. Com. Pl.) (same)).)

action and several individual suits were filed by Cobblestone Park owners and prior owners against Ginn in 2009 and 2010,[4] to be later removed to this court. (*Id.* at 12-13.)

Plaintiff claims the statute of limitations began on November 8, 2016, the date when Plaintiff claims she learned of the alleged scheme through her attorney, because "[a]t no time prior to [this] conversation [was] Plaintiff[] aware of Defendant's improper involvement in the sale/purchase of [the] Lot[.]" (ECF No. 12 at 4.) Defendant labels Plaintiff's alleged November 8, 2016 discovery timeframe as "a blatant attempt to circumvent the three-year statute of limitations." (*Id.* at 13.) Additionally, Defendant asserts "Plaintiff[] [has] made no allegations that [she] did anything in the interim period to discover [Defendant's] alleged wrongdoing or the [Defendant] made any attempts to frustrate discovery despite [her] due diligence." (*Id.*) Thus, according to Defendant, Plaintiff's claim would have expired in 2012 at the very latest.

In contrast, Plaintiff points to Defendant's 2005 appraisal of her Lot as evidence demonstrating Plaintiff could not have been aware of its true value at the time. (*Id.* at 6.) Plaintiff also asserts she was completely unaware of the actions of Cobblestone lot owners as early as 2009 because she resides in Charleston, South Carolina, and had no way of knowing about Defendant's appraisal scheme. (*Id.* at 4.) In fact, Plaintiff contends she had no relationship with her counsel until 2012. (*Id.* at 6.) Plaintiff claims to have demonstrated due diligence when she took extensive notes during her November 8, 2016 conversation with her attorney, reached out to Attorney Timmermans for assistance, and attempted to contact Defendant's local branch and their loan assistance call center with no success. (*Id.* at 5.) Finally, Plaintiff contends that the period begins *after discovery* of the actor responsible for the injury. (*Id.* at 7 (citing *Brooks v. GAF Materials*

---

[4] (*See* ECF No. 6-1 at 12-13 (citing *Passarella v. The Ginn Co.*, 3:09-cv-00417-JFA (D.S.C. 2010), Dkt. No. 1-2 at 15; *Cohen v. The Ginn Co.*, 3:10-cv-02850-CMC (D.S.C. 2010), Dkt. No. 1-1 at 6; *O'Brien v. The Ginn Co.*, 3:09-cv-00294-JFA (D.S.C.), Dkt. No. 1-1 at 1).)

*Corp.*, 284 F.R.D. 352, 357 (D.S.C. 2012)).)  Thus, because Plaintiff filed her action on November 8, 2019, she asserts Defendant's statute of limitations argument must fail.  (*Id.* at 7.)

## 2. The Court's Review

### a. SCUTPA Claim

Plaintiff brings her first cause of action under the SCUTPA, alleging Defendant engaged in unfair trade practices by using an inflated appraisal value to coerce Plaintiff to assume an under-collateralized mortgage loan.  (ECF No. 1-1 at 8-9 ¶ 15, 15 ¶ 25.)   The SCUTPA states,

> Any person who knowingly with intent to sell . . . securities, [or] service . . . to the public for sale . . . or with intent to increase the consumption thereof, . . . makes [a statement] . . . which contains any assertion, representation or statement of fact which is intentionally untrue shall be guilty of a misdemeanor and upon conviction shall be punished . . . .

S.C. Code Ann. § 39-1-20.  The respective statute of limitations is outlined, "no action may be brought under this article more than *three years* after discovery of the unlawful conduct which is the subject of the suit."  S.C. Code Ann. § 39-5-150 (West 2020) (emphasis added).  Plaintiff filed her action on November 8, 2019 and claims her suit is timely. (ECF No. 1-1 at 1.)

While legislatures typically use the time of discovery of a claim as the baseline for when a statute of limitations begins to run, "state and federal courts have interpreted the word to refer not only to actual discovery, but also to the hypothetical discovery of facts a *reasonably diligent* plaintiff would know."  *Merck Co. v. Reynolds*, 559 U.S. 633, 645 (2010) (emphasis added); *see also Blankenship v. Consolidation Coal Co.*, 850 F.3d 630, 639 (4th Cir. 2017) (" . . . the clock begins to run not only when plaintiffs actually knew of the [harm] but also when plaintiffs *reasonably should have known* . . . .); *Moriarty v. Garden Sanctuary Church of God*, 534 S.E.2d 672, 676 (S.C. 2000) ("The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person

8

of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist."). Accordingly, under certain circumstances, the question of whether reasonable diligence has been demonstrated can be a matter of law. *Drinkard v. Walnut Street Sec., Inc.*, No. 3:09-cv-66-FDW, 2009 WL 1322591, at *2 (W.D.N.C. May 11, 2009) (explaining reasonable diligence is established as a matter of law where the evidence is clear and shows no conflict that Plaintiffs had the capacity to discover the fraud).

Here, even if Plaintiff did not know of the injury before 2016, she was on notice of the inflated price of her property before 2016. Assuming as true, Plaintiff's claim that she continued to rely on Defendant's appraisal after her purchase in 2005, Plaintiff had reason to know her purchase price did not reflect the true value of the Lot in 2006 the moment Ginn failed to provide the amenities as promised. Because the Lot value was contingent on the development of these amenities and infrastructures, this failure alone is enough to demonstrate her loan was under-collateralized. *Kaufman v. Bank of America, N.A.*, No. 1:12-cv-00228-MR-DLH, 2014 WL 6065915 at *4 (W.D.N.C. Nov. 13, 2014) (finding statute of limitations expired for fraud claims because plaintiffs were on notice of their injury when developers failed to complete promised amenities and infrastructure).

At the very latest, a minimal amount of diligence would lead Plaintiff to discover that the property was under-collateralized in 2009 when other Cobblestone owners filed claims against Defendant. A basic inquiry into these suits would have indicated a pattern of behavior that resulted in similar harm suffered by similar plaintiffs at the hands of Defendant. While Plaintiff claims to be unaware of these actions because she resided in Charleston, this excuse is insufficient to toll the statute of limitations. *Bayle v. S.C. Dept. of Transp.*, 542 S.E.2d 736, 740 (S.C. Ct. App. 2001) (quoting *Joubert v. S.C. Dep't of Social Servs.*, 534 S.E.2d 1, 9 (S.C. Ct. App. 2000)) ("The date

on which discovery of the cause of action should have been made is an objective, rather than subjective, question.") Instead, the test is "whether the circumstances of the case would put a person of common knowledge and experience on notice . . . that some claim against another party might exist." *Id.* The answer here is clear: reasonable diligence would have given Plaintiff notice that a claim existed as early as 2006 and no later than 2009.

Next, Plaintiff's contention that the statute of limitation centers around the discovery of the *actor* regarding a claim misconstrues the objective standard of the discovery rule. The date on which the statute of limitations begins to run is not determinative upon the discovery of a wrongdoer, but instead upon the date of the injury. *See Wigging v. Edwards*, 314 S.E.2d 169, 170 (S.C. 1994). "If, on the date of the injury, a plaintiff knows or should know that she had some claim against someone else, the statute of limitations begins to run for all claims based on that injury. *Id.* (quoting *Tollison v. B & J Machinery Co.*, 812 F.Supp 618, 620 (D.S.C. 1993)). The fact that Plaintiff discovered a potential claim against Defendant in 2016 is immaterial when she could have discovered the alleged harm at a much earlier point in time. Because the statute of limitations began in 2009 at the very latest and ended in 2012, Plaintiff has failed to bring a timely action under SCUTPA because she did not file her action until 2016. Thus, Plaintiff's SCUTPA claim is time-barred and fails as a matter of law.

Finally, Plaintiff misinterprets *Brooks v. GAF Materials* by claiming the statute of limitations begins accruing after discovery of the actor responsible for the injury. *Brooks* outlines the discovery rule as follows:

> The discovery rule determines the date of accrual for a claim. Under the discovery rule, an action accrues *on the date an aggrieved party either discovered or should have discovered*, through reasonable diligence, that a claim has occurred. South Carolina's discovery rule does not require actual notice of or knowledge of the full extent of damages or a claim; rather, the rule only requires a party to act promptly

to investigate the existence of a claim where facts and circumstances indicate that one might exist.

*Brooks v. GAF Materials Corp.*, 284 F.R.D. at 357. (Citations omitted). (Emphasis added). Accordingly, the statute of limitations began accruing for her claim on the date Plaintiff should have discovered her injury.

       b.  Negligence/Failure to Disclose Claim[5]

Plaintiff brings a third cause of action claiming negligence and failure to disclose in relation to Defendant's allegedly inflated appraisal value.  (ECF No. 1-1 at 8 ¶ 43.)  Plaintiff explains:

> Defendant had a duty in selecting an appraiser upon whose appraisal it knew that [] Plaintiff[] would rely in making the loan transaction at issue and Defendant breached this duty by obtaining essentially a phony appraisal and then charging [] Plaintiff[] for said appraisal while at the same time, failing to disclose that the appraiser was engaged in conduct in the preparation of the appraisal that was either reckless, willful and wanton, or was intentionally fraudulent, thus voiding the loan and mortgage at issue.

(*Id.*)  In South Carolina, claims alleging negligence also adhere to a three-year statute of limitations for "an action upon a contract, obligation, or liability, express or implied . . . ."  S.C. Code Ann. § 15-3-530 (West 2020).  As outlined previously, the statute of limitations for Plaintiff's claim began tolling in 2009 and ended in 2012 at the latest.  Because Plaintiff did not file her action until 2016, Plaintiff's claim for negligence/failure to disclose is time-barred and fails as a matter of law.

       c.  Unjust Enrichment Claim

Plaintiff's second cause of action claims Defendant is unjustly enriched by collecting payments for a mortgage on property and land which she alleges to be dramatically overvalued.  (ECF No. 1-1 at 11 ¶ 31.)  She also alleges her unjust enrichment action is not time-barred because

---

[5] Based on the allegations in the Complaint, the claim for failure to disclose does not appear to be independent from the negligence claim and only serves as a separate allegation of the breach of duty.  (*See* ECF No. 1-1 at 13 ¶ 42-14 ¶ 45.)

it is an action in equity, and not in law.  (ECF No. 12 at 12 (citing *Columbia Wholesale Co. v. Scudder May N.V.*, 440 S.E.2d 129 (1994)).)  While South Carolina courts have traditionally found that actions in equity are not subject to a statute of limitations, *Dixon v. Dixon*, 608 S.E.2d 849, 855 (S.C. 2005), this argument is irrelevant because "[r]ecovery under a theory of unjust enrichment is available only where the rights and responsibilities at issue are not governed by an express contract." *Wells Fargo Bank v. Carter*, No. 9:14-127-SB, 2014 WL 11034776, at *2 (D.S.C. July 22, 2014) (quoting *Palmetto Health Credit Union v. Open Solutions, Inc.*, No. 3:08-cv-3848-CMC, 2010 WL 2710551, at *4 (D.S.C. July 7, 2010)); *see also WRH Mortg., Inc. v. S.A.S. Assocs.*, 214 F.3d 528, 534 (4th Cir. 2000) (holding that an unjust enrichment action is not available when the controversy is based on an express loan contract which governs the parties' obligations).

Because Plaintiff is asserting that Defendant is unjustly enriched by collecting principal payments and accrued interest as agreed to under an express mortgage contract, an action for unjust enrichment is not available and this claim fails as a matter of law.  *WRH Mortg.*, 214 F.3d at 534 (citing *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988)) (finding in regard to a promissory note between parties, "where a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not lie.").

## V. CONCLUSION

For the foregoing reasons the court **GRANTS** Defendant's Motion to Dismiss (ECF No. 6). Plaintiff's claims alleging violations of the SCUTPA, unjust enrichment, and negligence/failure

to disclose are **DISMISSED** with prejudice.[6] Additionally, Plaintiff's claim under S.C. Code Ann.

§ 40-58-10 is **DISMISSED** as Plaintiff has abandoned this claim.

      **IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

July 13, 2020
Columbia, South Carolina

---

[6] When determining whether to dismiss Plaintiff's Complaint with prejudice, the court must determine whether the Complaint could be amended and filed with claims over which the court has jurisdiction.  "To the extent, however, that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating this dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."  *McLean v. U.S.*, 556 F.3d 391, 400 (4th Cir. 2009).  Here, the court makes clear that Plaintiff's Complaint is incurable as her claims are time-barred.